1

2

3

4

5

6

7                        IN THE UNITED STATES DISTRICT COURT

8                     FOR THE NORTHERN DISTRICT OF CALIFORNIA

9

10

11  JOSEPH ATKINSON,                          No. C 06-4612 WHA (PR)

12              Petitioner,                   **ORDER DENYING PETITION FOR
                                              WRIT OF HABEAS CORPUS**
13       v.

14  T. FELKER, Warden,

15              Respondent.

16  _____/         (Docket No. 21)

17                              **INTRODUCTION**

18       This is a federal habeas corpus action filed by a state prisoner pursuant to 28 U.S.C. 2254.

19  As grounds for habeas relief petitioner alleges that the trial court violated his rights when it denied

20  his motion for a new trial, and that he received ineffective assistance of counsel.  For the reasons set

21  forth below, the petition is **DENIED**.

22                              **BACKGROUND**

23       Petitioner was convicted in state court of murder and received a sentence of fifty-five years.

24  The prosecution's case rested largely on the testimony of Reece Allen, who gave evidence at trial

25  that she had seen petitioner and another man on the street outside her apartment less than thirty

26  minutes before the shooting of Cook, had heard the gunshots, and then had seen from her window

27  petitioner shooting at a "person or whatever it was."  The defense case rested largely on the

28  testimony of Celia Cruz, who lived with petitioner at the time of the killing.  Cruz, who was married

1   to petitioner at the time of trial, but not at the time of the murder, testified that she had seen another

2   man, Larry Russell, fire three or four shots at Cook.  On cross-examination, Cruz admitted that she

3   had lied in a statement she gave to the police shortly after the shooting.  "She also admitted that she

4   did not identify Larry Russell as the killer of Paul Cook when she spoke to police, and indeed at no

5   time thereafter even though [petitioner], her husband, had been arrested for the murder" (Ans., Exh.

6   5 (People v. Atkinson, No. A097376, 2005 WL 435494 (Cal. Ct. App. Feb. 25, 2005) at 3-7).

7        An investigator for the district attorney, John Wasson, testified at trial that he tried to contact

8   Larry Russell in order to talk with him about the Cook murder, having heard of Russell's alleged

9   guilt through petitioner's brother Reggie Atkinson.  Wasson testified that when Russell saw Wasson,

10  Russell walked away and that he (Wasson) never saw Russell after that (id. at 6-7).

11       Petitioner testified at trial that during the day before the murder, he was nursing Cruz, who

12  was ill, and had also spent the day gambling and hanging out with Cook, who was his friend.

13  Petitioner testified that on the night of the killing, he walked Cruz to her house, and then saw Russell

14  and Cook arguing.  Petitioner testified that after he tried to calm the two down, Russell took a gun,

15  "charged at Cook," fired at him, but missed.  Petitioner testified that Cook then ran to the front of a

16  parked car while Russell ran around the back to cut him off.  Petitioner testified that Cook said, "I'm

17  sorry" three times before Russell said, "[I]t's too late now" and then shot Cook in the back of the

18  head.  According to petitioner's testimony, Cook then fell and Russell shot him a few more times

19  (id. at 8).

20       A Contra Costa County Superior Court jury convicted petitioner of one count of first-degree

21  murder, Cal. Pen. Code § 187, and one count of possessing marijuana, Cal. Health & Saf. Code

22  § 11359.  The jury further found that petitioner personally had used a firearm (Cal. Pen. Code

23   § 12022.5(a)(1)), personally had discharged a firearm that caused great bodily injury (id.

24  § 12022.53(d)), and had served two prior prison terms (id. § 667.5(b)).  The trial court sentenced

25  petitioner to fifty-five years in state prison (Ans., Ex. 5 at 8).  Petitioner appealed.  The California

26  Court of Appeal for the First Appellate District, in an unpublished opinion, affirmed the judgment

27  (id. at 1).  The state appellate court also denied petitioner's state habeas petition and the California

28  Supreme Court denied petitioner's petition for review (Pet. at 3-4).  Petitioner filed this federal

1  habeas action in 2006.

2      As grounds for federal habeas relief, petitioner alleges that (1) the trial court violated his

3  rights when it denied his motion for a new trial; and (2) he received ineffective assistance of trial

4  counsel.

5                                          **STANDARD OF REVIEW**

6      A federal habeas court will entertain a petition for a writ of habeas corpus "in behalf of a

7  person in custody pursuant to the judgment of a State court only on the ground that he is in

8  custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C.

9  2254(a). The court may not grant a petition with respect to any claim that was adjudicated on the

10 merits in state court unless the state court's adjudication of the claim "resulted in a decision that

11 was contrary to, or involved an unreasonable application of, clearly established Federal law, as

12 determined by the Supreme Court of the United States" 28 U.S.C. 2254(d)(1).

13      "Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court

14 arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if

15 the state court decides a case differently than [the Supreme] Court has on a set of materially

16 indistinguishable facts." *Williams v. (Terry) Taylor*, 529 U.S. 362, 412-13 (2000). "Under the

17 'unreasonable application clause,' a federal habeas court may grant the writ if the state court

18 identifies the correct governing legal principle from [the Supreme] Court's decisions but

19 unreasonably applies that principle to the facts of the prisoner's case." *Id*. at 413.

20      A federal habeas court may also grant the writ if it concludes that the state court's

21 adjudication of the claim "resulted in a decision that was based on an unreasonable determination

22 of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. 2254

23 (d)(2). The court must presume as correct any determination of a factual issue made by a state

24 court unless the petitioner rebuts the presumption of correctness by clear and convincing evidence.

25 28 U.S.C. 2254(e)(1).

26      The state court decision to which section 2254(d) applies is the "last reasoned decision" of

27 the state court. *See Ylst v. Nunnemaker*, 501 U.S. 797, 803-04 (1991); *Barker v. Fleming*, 423

28 F.3d 1085, 1091-92 (9th Cir. 2005). When there is no reasoned opinion from the highest state

**United States District Court**
For the Northern District of California

United States District Court
For the Northern District of California

1  court to consider the petitioner's claims, the court looks to the last reasoned opinion. *See*

2  *Nunnemaker* at 801-06; *Shackleford v. Hubbard*, 234 F.3d 1072, 1079, n. 2 (9th Cir. 2000).

3  Where the state court gives no reasoned explanation of its decision on a petitioner's federal claim

4  and there is no reasoned lower court decision on the claim, a review of the record is the only

5  means of deciding whether the state court's decision was objectively reasonable. *See Himes v.*

6  *Thompson*, 336 F.3d 848, 853 (9th Cir. 2003).  When confronted with such a decision, a federal

7  court should conduct "an independent review of the record" to determine whether the state court's

8  decision was an unreasonable application of clearly established federal law. *Ibid*.

9       If constitutional error is found, habeas relief is warranted only if the error had a

10  "'substantial and injurious effect or influence in determining the jury's verdict.'" *Penry v.*

11  *Johnson*, 532 U.S. 782, 795 (2001) (quoting *Brecht v. Abrahamson*, 507 U.S. 619, 638 (1993)).

12                                    **DISCUSSION**

13       Petitioner contends that the trial court violated his rights when it denied his motion for a

14  new trial.  Petitioner also contends that trial counsel rendered ineffective assistance by failing to

15  adequately investigate and impeach Allen.

16  **A.       Motion for a New Trial**

17       Petitioner claims that he based his motion for a new trial on newly discovered evidence

18  (Pet. at 5).  Specifically, petitioner contends that several persons could provide testimonial

19  evidence that Russell murdered Cook (*id*., Exh. 1 at 4).  The same state court judge who oversaw

20  petitioner's trial held a hearing on petitioner's motion, but found petitioner's new witnesses to be

21  not credible, and denied the motion.  The state appellate court also rejected petitioner's claim.[1]  Its

22  discussion of the issue is worth quoting at length:

23       A former girlfriend of Russell, Melody Waldon, was with [petitioner] and Russell
         on 4th Street just before the shooting.  Russell was selling drugs and would not take
24       her home.  She walked to the neighborhood store.  On her way back she heard
         shots. She did not see the shooting.  She went to the motel room she shared with
25       Russell. Russell came back to the room and washed his hands in the bathroom.
         Waldon saw Russell had burned some clothes in the dumpster.  Russell told
26       Waldon he shot Cook because Cook had been "talking crazy or some shit all day."
         Waldon had seen Russell with a gun that day.  Russell had a number of guns.
27       Although she knew [petitioner] had been arrested for the murder, she did not go to

28  _____

         [1]   The appellate panel's members were Judges Marchiano, Swager, and Margulies.

                                              4

United States District Court
For the Northern District of California

the police because she was afraid of Russell.  Waldon admitted drug use, but claimed she had not used drugs the night of the shooting.

Aaron Allison was a close family friend of [petitioner].  He was involved in the dice game the day of the killing.  Cook came up to the dice players and threatened to rob someone.  [Petitioner] told the players Cook was "cool" and "just under the influence right now."  Allison did not see Cook begging for drugs.  Allison did not witness the shooting.  A few days later, Russell told Allison he shot Cook in the head because Cook had argued with [petitioner].  Many months later Russell told Allison he would confess to the police.  Because he did not witness the shooting, Allison did not go to the police himself and identify Russell, not [petitioner], as the killer.

A lifelong friend of [petitioner], DeShawn Clark, was also involved in the dice game the day Cook was shot.  Cook showed an interest in the money being won by some of the players.  Clark was on 4th Street, a block from the murder scene, when he heard shots.  He ran into [petitioner], who said to Clark, "I told [Russell] not to do that."  [Petitioner] also said Russell had "popped" Cook.  Clark soon learned that [petitioner] had been arrested for the killing.  At some later point, Clark and Russell were in jail at the same time.  Russell told Clark to tell [petitioner] that he, Russell, was planning to admit the Cook killing.

Reggie [Atkinson, petitioner's] brother, played dice with the others in the park the day of the shooting.  [Petitioner], Clark, Russell, and Cook were there.  Cook wasn't gambling, but was mostly watching the game.  Cook was a friend of his brother's.  Cook asked [petitioner] for money and kept asking Reggie for money and drugs.  Cook was "high and drunk most likely."  Cook's behavior irritated Russell, who had "heated words" with Cook.  The game broke up and Reggie went home.  Russell met with Reggie the next day and said the night before he had shot someone with a weapon.  Russell indicated he had shot the victim in the shoulder area.

Henderson Porter met Russell and [petitioner] while the three were in jail together.  While [petitioner] was being tried, Russell told Porter he was going to tell police he killed Cook.  Porter heard Russell tell a sheriff's deputy that [petitioner] did not kill Cook.

On February 23, 2000 — a week after the jury convicted [petitioner] — Russell made a taped jailhouse confession to police officers that he killed Cook.  But after the tape was turned off Russell told one of the officers that "he was just trying to take care of his boy [viz., petitioner]."

Russell took the stand at the new trial hearing and invoked the Fifth Amendment.  Then the court admitted into evidence a tape of the jailhouse confession.  Neither the tape, nor a transcript of the confession is included in the record on appeal.  [Petitioner] represents, without contradiction by the People, that in his confession Russell claimed he shot Cook "one to three times while he was standing or falling to the ground" because Russell thought Cook was reaching for a gun.

Both Reggie and [petitioner's] trial counsel, Michael Oliver, testified that the basic idea that Russell, not [petitioner], killed Cook was well known at the outset of the case.  Indeed, Reggie testified he had repeatedly told Oliver before, during, and after [petitioner's] trial that Russell killed Cook, not [petitioner].  Oliver testified Reggie was "adamant that Mr. Russell was the perpetrator of the homicide . . ."

The trial court denied the motion for new trial insofar as it was based on newly

United States District Court
For the Northern District of California

discovered evidence.  The court found that Russell's admission to the killing was not newly discovered:  "The substance of it was known by Mr. Oliver through Reggie Atkinson and the [petitioner] at almost the beginning of his representation." Furthermore, "The so-called substantive confession given a week after the trial, in this court's view, now that I have heard all the evidence, was contrived.  The sequence of events, the manner of killing, and reason for the killing as related by Russell demonstrates clearly that the statement was false."  Also, "Russell admitted to Investigator Wasson after the tape was turned off . . . that he was just trying to help his ['']boy[''].

The court further found the testimony of [petitioner's] witnesses was "simply not credible."  "All were either friends of or related to the [petitioner] and thus had a motive to fabricate evidence."  The court also noted that, except for Reggie, none of the witnesses "ever told the police what they knew."
. . . .

Here the trial court specifically found that [petitioner's] witnesses were not credible. The court saw and evaluated their demeanor in court.  They were all friends or family members of [petitioner].  Except for Reggie, none ever went to the police with their information. In any case, we do not readjudicate witness credibility on appeal.

The court also found that Russell's jailhouse confession was "false" and "contrived."  We agree.  The confession, made just a few days after [petitioner] was convicted and with the stated motivation of Russell to "take care of his boy," is inconsistent with the physical evidence:  Cook was not shot one to three times as he was standing or falling, but was shot four times — once in the neck and three times in the back of the head — as he was lying flat on the ground.  The confession is also
inconsistent with Allen's eyewitness testimony.  We cannot disturb the trial court's determination that the confession is not credible.

Ultimately, none of [petitioner's] evidence was newly discovered in the sense that its basic premise — that Russell killed Cook and [petitioner] was innocent — was well known to the defense all during trial.  And [petitioner] was able to present to the jury his theory that Russell was the killer through his own testimony and that of his wife, Celia Cruz.  The jury simply chose to disbelieve this testimony.  And even if one regards the evidence itself, not its basic premise, as newly discovered, it is merely cumulative of the defense theory, which was soundly rejected by the jury.

(Ans., Exh. 5 at 10-13).

As an initial matter, petitioner has not stated a cognizable federal claim.  There is no clearly established Supreme Court precedent that finds that a federal habeas petitioner has a right to a new trial hearing.[2]  Even if petitioner has stated a cognizable federal claim, his claim that the trial court violated his constitutional rights by denying his motion for a new trial is without merit. First, as the quotation above shows, some of this evidence — Reggie Atkinson's information —

---

[2]  Though a criminal defendant has no right to such a hearing, if a hearing on a motion for a new trial is held, a defendant does have a right to counsel at such a hearing.  *Menefield v. Borg*, 881 F.2d 696, 699 (9th Cir. 1989).

**United States District Court**
For the Northern District of California

was not newly discovered, but rather well-known to petitioner throughout the trial.  Second, the defense theory that Russell, and not petitioner, murdered Cook was also not newly discovered.  In fact, petitioner presented this theory at trial by calling Cruz to testify.  Finally, the trial court, which had overseen the trial and heard the testimony of the eyewitness Allen, concluded at the new trial hearing that the new witnesses were not credible.  This Court must defer to this finding because "no sort of factual finding [] is more appropriate for deferential treatment than [] a state court's credibility determination." *Knaubert v. Goldsmith*, 791 F.2d 722, 727 (9th Cir. 1986). "Title 28 U.S.C. § 2254(d) gives federal habeas courts no license to redetermine credibility of witnesses whose demeanor has been observed by the state trial court, but not by them." *Ibid.*, quoting *Marshall v. Lonberger*, 459 U.S. 422, 434 (1983).  Petitioner, then, has not shown that the trial court's denial of his motion for a new trial violated his constitutional rights.  To be sure, a petition is always troubling when a habeas petitioner convicted of murder can point to a series of witnesses who "would have testified" that someone else committed the murder.  Very often, nonconclusory statements by uncalled witnesses could lend support to claims made in federal court.  But, in this case, an evidentiary hearing is unwarranted.  The judge who presided over the trial held an evidentiary hearing and made the specific finding that the new witnesses were not credible.  Given that 28 U.S.C. 2254 requires this federal court to defer to a state court's credibility findings, an evidentiary hearing on federal habeas is precluded.

Accordingly, the Court finds that the state court's determination was not contrary to, or an unreasonable application of, clearly established Supreme Court precedent, nor was it based on an unreasonable determination of the facts in light of the evidence presented under 28 U.S.C. 2254 (d)(1), (2).  Petitioner's claim is **DENIED**.

**B.**        **Ineffective Assistance of Trial Counsel**

Petitioner contends that trial counsel rendered ineffective assistance because (1) he failed to adequately investigate Russell's culpability and to subpoena Russell; and (2) he failed to investigate and present evidence to impeach Allen (Pet. at 5, Exh. 8-9).  The state appellate court denied all of petitioner's ineffective assistance of counsel claims.

United States District Court
For the Northern District of California

1.      **Investigating Russell's Alleged Culpability**

Trial counsel, Michael Oliver, testified at the hearing on petitioner's motion for a new trial, that he conducted his own investigation regarding Russell's alleged culpability, including visiting the crime scene and talking to nearby residents.[3]  According to Oliver, he concluded after his investigation that subpoenaing Russell to testify would be a mistake.  First, Russell, who was facing criminal charges unrelated to Cook's murder, was represented by another attorney, who, Oliver testified, would likely recommend that Russell not speak to Oliver about Cook's murder or agree to testify at petitioner's trial.  Second, Oliver concluded that Russell would not be a credible witness because Russell's stated version of the events was inconsistent with the physical evidence.  According to Oliver, Reggie Atkinson, from whom Oliver received most of his information about Russell, stated that Russell confessed to shooting Cook one to three times in the chest as he was standing or falling.  The physical evidence indicated that Cook in fact had been shot four times in the neck and head while he was lying on the ground.  Third, at trial Oliver tried to admit Reggie Atkinson's statements about Russell's confession.  The trial court denied Oliver's request because it concluded that Oliver "had not been sufficiently diligent to make Russell an available witness."  Fourth, Oliver testified that he declined to present a recording of a 911 call in which an anonymous caller named Russell as the killer because it was hearsay.  Also, Oliver testified that he was "suspicious" of the tape because Reggie Atkinson knew about its existence before the defense (Ans., Exh. 5 at 14-15).

Claims of ineffective assistance of counsel are examined under *Strickland v. Washington*, 466 U.S. 668 (1984).  In order to prevail on a claim of ineffectiveness of counsel, petitioner must establish two things.  First, he must establish that counsel's performance was deficient, *i.e.*, that it fell below an "objective standard of reasonableness" under prevailing professional norms.  *Id.* at 687-68.  Second, he must establish that he was prejudiced by counsel's deficient performance, i.e., that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Id.* at 694.  A reasonable probability is a probability

---

[3]  Oliver did not use investigators because he thought that the neighborhood residents would not cooperate with an investigator, and also because he thought the neighborhood was "dangerous"  (Ans., Exh. 5 at 14).

United States District Court
For the Northern District of California

1  sufficient to undermine confidence in the outcome.  *Ibid*.  Where the defendant is challenging his

2  conviction, the appropriate question is "whether there is a reasonable probability that, absent the

3  errors, the factfinder would have had a reasonable doubt respecting guilt."  *Id*. at 695.  It is

4  unnecessary for a federal court considering a habeas ineffective assistance claim to address the

5  prejudice prong of the Strickland test if the petitioner cannot even establish incompetence under

6  the first prong.  *See Siripongs v. Calderon*, 133 F.3d 732, 737 (9th Cir. 1998).

7       Applying these principles to the instant matter, this order concludes that petitioner's claim

8  is without merit.  As to the question of Oliver's alleged incompetence, facts such as Russell's

9  description of the gunshot wounds being at odds with the physical evidence and his being

10  represented by counsel in another criminal matter indicate that Oliver conducted a reasonable

11  investigation, and, as a result of that investigation, concluded that Russell would not be a credible

12  or helpful witness.  Also, even though Russell did not testify at trial, Oliver was able to present at

13  trial the theory of Russell's culpability.  The record supports the state appellate court's conclusion

14  that Oliver "performed with reasonable competence."

15       **2.  Impeaching Allen**

16       Petitioner contends that trial counsel rendered ineffective assistance by failing to properly

17  investigate Allen and impeach her testimony.  At trial, Oliver chose to paint Allen as a paid

18  informant, rather than as a possible drug addict, and, to this end, presented evidence at trial that

19  Allen had received $18,000 for living and moving expenses from the district attorney's office.

20  Allen testified at the new trial hearing that she had used drugs in the past, but had stopped such use

21  six years before the hearing.  At the same hearing, petitioner presented witnesses who testified that

22  Allen was a liar, a crack-user who exchanged sex for drugs and bought drugs from petitioner, and

23  was motivated to testify by her desire for revenge against petitioner (Ans., Exh. 5 at 18-19).

24       In ruling on the motion for a new trial, the trial court found that petitioner's impeachment

25  witness were not credible, whereas Allen was "a terrific witness" who "came across as highly

26  believable."  The trial court further found that Oliver was prepared to cross-examine Allen and

27  was in fact used his "game plan" of impeaching Allen as a paid informant, and tried to show that

28  Allen was mistaken in her observations of the crime.  The state appellate court affirmed the trial

United States District Court
For the Northern District of California

1    court's finding as correct.  "Oliver conducted a reasonable investigation of Allen and her

2    demeanor as a witness.  He knew her testimony was consistent with the physical evidence.  He

3    knew of no reason for her to be lying except possibly of being so motivated by the financial

4    assistance she received from the People" (*id*. at 19-20).

5         Petitioner's claim is without merit.  Tactical decisions of trial counsel, such as Oliver's

6    plan to paint Allen as a paid informant, deserve deference when: (1) counsel in fact bases trial

7    conduct on strategic considerations; (2) counsel makes an informed decision based upon

8    investigation; and (3) the decision appears reasonable under the circumstances.  *See Sanders v.*

9    *Ratelle*, 21 F.3d 1446, 1456 (9th Cir. 1994).  The record indicates that all three elements are

10   present in this case.  Oliver chose what he saw as the most effective method of impeachment,

11   rather than relying on witnesses who may not have been credible.  This decision was based on an

12   investigation into Allen and her financial relationship with the district attorney's office.  Further,

13   Oliver's tactical decision was reasonable under the circumstances, considering that Allen did

14   receive a great deal of money from the district attorney.  The record supports the state court's

15   conclusion that Oliver's representation fell within the objective standard of competence.[4]  Because

16   petitioner has not shown incompetence under the first prong of Strickland, it is unnecessary to

17   consider the question of prejudice.  *See Siripongs*, 133 F.3d at 737.

18        As to petitioner's ineffective assistance claims, the Court concludes that the state court's

19   determination was not contrary to, or an unreasonable application of, clearly established Supreme

20   Court precedent, nor was it based on an unreasonable determination of the facts in light of the

21   evidence presented under 28 U.S.C. 2254 (d)(1), (2).  Petitioner's claims are **DENIED**.

22

23

24

25

26   ―――――――――――――――

27        [4]  Petitioner offers as evidence of incompetence that Oliver was facing disciplinary proceedings before the
     California State Bar for his handling of an unrelated case (Ans., Exh. 5 at 15-16).  Oliver was in fact disbarred in 2002, for
28   conduct unrelated to the instant matter (*id*., Mem. P. & A. at 14 n.8).  These facts, however, are insufficient to show a Sixth
     Amendment violation.  Petitioner must show that Oliver rendered ineffective assistance in the instant matter.  This petitioner
     has not done.

**CONCLUSION**

For the foregoing reasons, the petition for a writ of habeas corpus is **DENIED**.  Petitioner's motion for discovery (Docket No. 21) is **DENIED AS MOOT**.  The clerk shall enter judgment, terminate all pending motions, and close the file.

**IT IS SO ORDERED.**

Dated: November  12  , 2008

_____
WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE